UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SARAH V. KELLY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-132 |
| | § | |
| MERRILL O. HINES, III, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is (1) the defendant Dr. Merrill O. Hines's motion to dismiss (Dkt. 9) Dr. Sarah Kelly's complaint and (2) Kelly's motion for leave to file a surreply (Dkt. 16). Having considered the motions, responses, replies, and applicable law, the court finds that Hines's motion to dismiss should be GRANTED and that Kelly's motion for leave to file surreply should be DENIED.

**I. BACKGROUND**

This action arises from Kelly's allegations that her rights were violated under Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and § 1983. Dkt 13 at 1 (citing 42 U.S.C. § 12132, 29 U.S.C. § 794, and 42 U.S.C. § 1983). Kelly is a physician living in Fort Bend County, Texas. *Id.* at 2. Hines is an assistant medical examiner and director of the Forensic Pathology Fellowship Program at the Harris County Institute for Forensic Science (the "Program"). *Id.* Kelly entered a one-year fellowship training at the Program to receive a certification in Forensic Pathology. *Id.* at 3. Hines is the Program's director and supervised Kelly throughout the duration of her fellowship training. *Id.* at 7. Kelly entered the Program on July 1, 2012, and formally

resigned from the Program on January 10, 2013. *Id.* Kelly suffers from several medical conditions that she alleges require accommodation in the workplace. *Id.* at 6.

Starting in July 2012, the first month of the fellowship, Kelly had issues with Hines's supervisory approach. *Id.* at 7–8. During a meeting, Kelly felt that Hines inappropriately raised his voice at her and invaded her personal space. *Id.* at 7. Kelly informed Hines of her disabilities and asked for a reasonable accommodation from Hines in the form of improved communications with her to avoid an "adversarial dynamic." *Id.* at 8. The communications between Kelly and Hines continued unchanged, causing Kelly to experience physical symptoms. *Id.* In early October 2012, Kelly sent an email to Hines's superior regarding the alleged hostile work environment and requested a reasonable accommodation, but received no response. *Id.*

During her time in the Program, Kelly was reprimanded for lapses in adherence to the Program's policies and procedures. The reprimands included:

> 1. Identifying herself and her work to an unidentified person at an accident site, jeopardizing the Program's protection of sensitive information and appearance of impartiality. *Id.* at 9.
> 2. Not correcting placeholder values for heart valve dimensions and not notifying attending physicians of her preliminary measurements, against acceptable practice. *Id*. at 11.
> 3. Violating the Program's visitation policy when her family visited her office, potentially exposing them to autopsy material. The family members were allowed into the office by another fellow. *Id.* at 13.
> 4. Falling asleep at the wheel after work, causing her vehicle to run into a light pole. This resulted in a meeting with Hines about the importance of adhering to duty hours and avoiding fatigue. *Id.* at 14.
> 5. Stating, "sometimes I could just kill him," regarding Hines. The statement was a result of Hines finding a typographical error on a report he requested be completed immediately. Hines shouted at Kelly in a hallway about the report. *Id.* at 17.

On January 2, 2013, Hines and other directors met with Kelly regarding the threatening statement she made against Hines. *Id.* Kelly expressed her desire to resign, but she was told she needed a summative evaluation first. *Id*. at 18. On January 10, 2013, the directors, Kelly, and her attorney went over her summative evaluation. *Id.* The Program accepted her letter of resignation and Kelly's attorney viewed her employment file and found no evidence of any disciplinary action against her. *Id.* at 19.

After leaving the Program, Kelly applied to the Texas Medical Board for a medical license which was denied. Dkt. 10 at 2. In May 2013, as part of the licensing process, Hines submitted a Physician Licensure Form ("Form L") to the Texas Medical Board. Dkt. 13 at 3. On Form L, Hines stated that Kelly had a history of disciplinary issues, suspension, misconduct, and unprofessional conduct while training with the Program. *Id.* On January 17, 2014, Kelly's new attorney received her entire academic file, revealing the adverse information that Hines submitted. Dkt. 10 at 2–3.

Kelly alleges discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act. Dkt 13 at 1 (citing 42 U.S.C. § 12132 and 29 U.S.C. § 794). Kelly further alleges that the information Hines submitted to the Texas Medical Board was false, misleading, fraudulent, and led to the denial of her medical license application. Dkt. 10 at 3. Kelly alleges that she was denied due process because of her inability to rebut or challenge any of the adverse information on her record. *Id.* at 2. On March 21, 2016, Hines filed a motion to dismiss Kelly's complaint based on the theory that all of Kelly's claims are barred by the statute of limitations. Dkt. 9. Kelly responded. Dkt. 10. On April 22, 2016, Kelly filed a second amended complaint, repeating identical allegations but clarifying some of the nature of her claims and grounds for relief. Dkt. 13. On reply, Hines reasserts

3

his motion to dismiss arguments, indicating to the court that his motion to dismiss remains applicable to the live complaint. Dkt. 17 at 1.

## II. LEGAL STANDARD

### A.     Rule 12(b)(6)

Hines seeks dismissal under Fed. R. Civ. P. 12(b)(6). Dkt. 9. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In turn, a party against whom claims are asserted may move to dismiss those claims when the pleader has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To meet this standard, a pleading must offer "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (holding "naked assertions devoid of further factual enhancement," along with "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth).

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284

(5th Cir. 1993). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When considering a motion to dismiss for failure to state a claim, courts generally are limited to the complaint and any attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint, including those made on appeal.").

**B.  Statute of Limitations**

A complaint may be subject to dismissal under Fed. R. Civ. P. 12(b)(6) if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling. *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011).

The Fifth Circuit applies Texas's personal injury statute of limitations claims to claims under both the ADA and the Rehabilitation Act. *Frame*, 657 F.3d at 237 (reasoning that "most discrimination claims involve 'injury to the individual rights of a person,' and thus are analogous to personal-injury tort claims"). The limitations period for personal injury actions in Texas is two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). Despite the fact that Texas's statute of limitations is adopted here, federal law still dictates the date of accrual for a federal cause of action. *Frame*, 657 F.3d at 237. Under federal law, accrual begins "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).

Similarly, federal courts borrow the forum state's general personal injury limitations period for determining the statute of limitations in § 1983 civil rights suits. *See, e.g.*, *id.*; *Burns v. Harris Cty. Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir.1998); *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). Texas has a two-year statute of limitations on personal injury claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

### III. ANALYSIS

#### A. Objections to Evidence and Motion for Leave to File Surreply

In his reply, Hines objected to the evidence (Dkts. 11-1, 12) that Kelly attached to her response. Dkt. 15 at 1–2. In light of Hines's objection, Kelly moved to offer a surreply and re-offered additional evidence (Dkt. 18, Exs. 1–4). Hines objected to the surreply. Dkt. 17.

Under the Federal Rules of Civil Procedure, when considering a motion to dismiss for failure to state a claim, generally the court limits its inquiry to the complaint and any attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). The court will only consider Kelly's complaint (Dkts. 1, 13), and assume all factual allegations in the complaint are true for the purposes of assessing Hines's motion to dismiss. *Twombly*, 550 U.S. at 555. The court will not consider any additional evidence. Therefore, Hines's motion to strike Kelly's additional evidence (Dkts. 11-1, 12; Dkt. 18, Exs. 1–4) is GRANTED. Dkt. 15 at 1–2.

Kelly also argues that a surreply is necessary to address new arguments raised in Hines's response. Dkt. 18. The court does not find that any new arguments were raised in Hines's response and thus a surreply is not necessary. Therefore, Kelly's motion for leave to file a surreply is DENIED. Dkt. 16.

B. **ADA and the Rehabilitation Act**

Hines argues that Kelly's claims under the ADA and the Rehabilitation Act are untimely. Dkt. 9 at 5. Hines alleges that the latest date in which Kelly's claims accrued was when Kelly resigned on January 10, 2013—over three years before Kelly filed this suit. *Id.* at 3. Kelly argues that January 17, 2014, is when her injury accrued because that is when she became aware of her injury. Dkt. 10 at 6. Further, Kelly raises a continuing violation theory. *Id.* A continuing violations theory establishes a pattern or policy of discrimination continuing from outside the limitations period into the limitations period so that the discriminatory acts that are committed as part of the pattern are considered timely. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). The court will address the statute of limitations accrual before turning to the applicability of the continuing violations theory.

The ADA and the Rehabilitation act are generally interpreted identically. *Frame*, 657 F.3d at 223 ("The ADA and the Rehabilitation Act generally are interpreted *in pari materia.*"). The court will address the statute of limitations issues under both the ADA and the Rehabilitation Act concurrently. For statute of limitations purposes, accrual occurs when Kelly had "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091 (2007). Distilled further, accrual happens the moment Kelly became aware that she had suffered an injury or had sufficient information to know that she had been injured. *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008).

The complaint contains instances that clearly demonstrate Kelly's awareness that she suffered an injury. In the first month of her fellowship training, Kelly asked Hines for a "reasonable accommodation." Dkt. 13 at 7. ("She asked if they could work out some reasonable

accommodations to improve their communications."). Later, Kelly made a similar request via email to Hines's superior in October 2012. *Id.* at 8. (". . . Applicant stated that she was in a hostile work environment and requested a reasonable accommodation. She received no response."). Kelly was aware of her injury as late as October 2012 but did not file suit until January of 2016—more than four years later.

Moreover, the "continuing violation" exception Kelly raises does not advance her claims. In *Pegram*, the Fifth Circuit held that "[u]nder the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." 361 F.3d at 279 (citing *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002)). The Supreme Court further clarified that discrete acts, such as termination, constitute a separate actionable unlawful employment practice which are not actionable if time barred. *Nat'l R.R Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061 (2002). Applying *National Railroad* to Kelly's ADA and Rehabilitation Act claims, Kelly's resignation in 2013, three years before filing suit, is a discrete act and is not a part of any continuing violation but instead its own actionable employment practice. Kelly asserted her rights on at least two occasions and was denied accommodations, most recently in October 2012. Kelly's ADA and Rehabilitation Act claims both arose over two years before she filed suit.[1] Accordingly, Hines's motion to dismiss Kelly's ADA and Rehabilitation Act claims is GRANTED.

---

[1] Because the court finds these claims are barred due to the statute of limitations, it need not address Hines's other substantive arguments for dismissal, such as the lack of federal funding for the fellowship program, Kelly's failure to exhaust administrative remedies in pursuing her claims, and Hines's immunity from suit. Dkt. 9 at 4–6.

**C.     Section 1983**

Kelly also contends that her procedural due process rights were violated under the Fifth and Fourteenth Amendments. Dkt. 13. Specifically, she claims that she did not have notice and the opportunity to be heard to defend herself against Hines's claims before any derogatory information was reported to the Texas Medical Board. *Id*. Kelly contends that failure to follow the disciplinary process set out in the Program's student handbook is a violation of her rights resulted in the denial of her medical license. *Id*. Hines argues that this claim should be dismissed because it is barred by the statute of limitations, or, alternatively, that Kelly failed to state a claim under § 1983. Dkt. 9.

   *1. Statute of Limitations*

Under federal law, Kelly's limitations period began when she became "aware that [she] had suffered an injury or had sufficient information to know that [she] had been injured." *Piotrowski*, 237 F.3d at 576. "Actual knowledge is not required 'if the circumstances would lead a reasonable person to investigate further.'" *Id.* (quoting *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992)). The Fifth Circuit has addressed accrual of statute of limitations with regards to professional license denials and suspension claims. In *Brossette v. City of Baton Rouge*, the plaintiff's § 1983 cause of action for suspension of his liquor license accrued on the day he received notice of the suspension instead of the day his suspension ended. 29 F.3d 623 (5th Cir. 1994). In *Burns v. Harris County Bail Bond Board*, the Fifth Circuit found that the plaintiff's claims had accrued prior to her bail bonds license non-renewal because she was "put on notice" of the non-renewal at a meeting with the bail bond board eleven days prior. 139 F.3d 513, 519 (5th Cir. 1998). The United States Supreme Court has addressed an analogous issue in *Delaware State College v. Ricks*, holding that for statute of limitations purposes, a faculty member's notice of denial of tenure—not the

nondiscriminatory termination of his employment a year later—triggered accrual. 449 U.S. 250, 257–58, 101 S. Ct. 498 (1980).

Hines argues that Kelly's claims for due process under § 1983 are untimely. Dkt. 9 at 5. Hines alleges that the latest date that Kelly's claims accrued was on January 2, 2013—over three years before Kelly filed this suit—at the meeting she had with her superiors regarding the threatening statements she made. *Id.* at 8. Kelly argues that January 17, 2014, is when her injury accrued because that is when she received notice of the adverse academic information reported to the Texas Medical Board and became aware of her injury . Dkt. 10 at 6.

Hines argues that any cause of action Kelly has under § 1983 are barred by statute of limitations prior to the date her suit was filed. Dkt. 9 at 9. Hines lists several instances in which Kelly "admittedly made mistakes and engaged in behavior that was inappropriate." *Id.* at 7–8. Hines even includes that Kelly signed off on paperwork identifying her deficient behavior and had attorney representation during at least one meeting. *Id.* at 8. Hines, however, misses the mark on the injury Kelly is alleging under § 1983. Kelly identifies her injury as the alleged false statements Hines made to the Texas Medical Licensing Board, not the disciplinary action taken against her during her fellowship training period. *Id.* at 4.

The latest date which Kelly's claims could have been triggered for statute of limitations purposes was, as she asserts, January 17, 2014, the date she received the alleged adverse information Hines submitted to the board. Dkt. 11 at 5. Hines fails to establish that Kelly should have known that disciplinary actions and adverse academic information would be reported on her Form L at any time prior to January 17, 2014. Taking Kelly's allegations in her complaint as true, a finder of fact

could determine that the earliest Kelly could have known about her injury was on January 17, 2014, making the filing of her § 1983 claim on January 16, 2016, timely.

*2. Due Process*

Now the court turns to whether Kelly plausibly stated a due process claim. To state a claim under 1983, the claimant (1) "must first show a violation of the Constitution or of federal law" and (2) "then show that the violation was committed by someone acting under color of state law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

Hines argues that Kelly failed to state a claim under § 1983 because (1) Kelly cannot prove that the denial of her medical license was caused by a violation of her Constitutional rights, (2) Kelly had opportunity to review and rebut disciplinary allegations in meetings with the Program administrators, and (3) the Rehabilitation Act precludes Kelly's § 1983 claims. Dkt. 10 at 8.

The court disagrees with Hines that the Rehabilitation Act precludes Kelly's § 1983 claims. Dkt. 9 at 9 (citing to *Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999)). The Rehabilitation Act provides comprehensive enforcement for violations of its provisions. *Lollar*, 196 F.3d at 610. Because of this enforcement regime, § 1983 claims can not brought concurrently with Rehabilitation Act claims for the same infringement of rights. *Id*. Kelly's Rehabilitation Act claim is about Hines's failure to accommodate her disability, which ultimately resulted in Kelly's resignation from the fellowship program. Dkt. 13 at 27. In contrast, Kelly's § 1983 claims are about Hines's failure to provide Kelly notice and the opportunity to be heard regarding disciplinary matters, which, she alleges, ultimately lead to the denial of her medical license. *Id*. at 24. The court finds that the disciplinary matters that formed the basis of Kelly's § 1983 claims were not all related to or caused by Kelly's disabilities. *Id*. at 27. The two claims are distinct and independent and Kelly does not

appear to be alleging the same claims under both causes of action. Therefore, the court concludes that Kelly's § 1983 claims are not precluded by her Rehabilitation Act claims.

However, the court agrees with Hines that Kelly has not alleged facts that show that the denial of her medical license was caused by a violation of the Constitution or federal law. The due process clause requires that any deprivation of life, liberty, or property "be preceded by notice and an opportunity for hearing appropriate to the nature of the case." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652 (1950)). Here, the relevant deprivation of property is Kelly's medical license. *See, e.g., Scally v. Texas State Bd. of Med. Examiners, 351 S.W.3d 434, 447 (*Tex. App.—Austin 2011, no pet.). Simply put, Hines's alleged failure to provide an appropriate academic disciplinary process did not deprive Kelly of her medical license—the Texas Medical Board deprived Kelly of her medical license.[2]

For the purposes of a motion to dismiss, the court accepts Kelly's assertion that she was assured that no derogatory academic information would appear in her academic file that was sent to the Texas Medical Board, but she was also told that "opinions" would be filled out as appropriate. Dkt. 13 at 18. When the facts are viewed in the light most favorable to Kelly, some of the derogatory information should not have been in her file without going through the fellowship program's disciplinary process first. *Id*. Despite these accusations, Kelly fails to establish that this particular

---

[2] Though neither party addresses this argument, the court observes that the Texas Medical Board provides notice and the opportunity to be heard with respect to medical licensing decisions. *See, e.g., Tex. Med. Bd. v. Wiseman*, No. 03-13-00210-CV, 2015 WL 410330, at *4 (Tex. App.—Austin 2015, pet. denied). Kelly reports that she took advantage of this process and attended "a hearing [that] was conducted before the State Office of Administrative hearings [and] an Administrative Law Judge heard evidence." Dkt. 10 at 3. Based on this appeal hearing, Kelly was ultimately granted an unrestricted medical license. *Id.*

derogatory information, in light of her entire record and history, is what caused the Texas Medical Board to deny her medical license application. Dkt. 7 at 9.

Accordingly, Hines's motion to dismiss Kelly's § 1983 cause of action is GRANTED.

### IV. CONCLUSION

For the preceding reasons, Hines's motion to dismiss (Dkt. 9) Kelly's claims is GRANTED. Dkt. 9.  Kelly's claims (Dkt. 13) are DISMISSED WITH PREJUDICE.

Kelly's motion for leave to file a surreply (Dkt. 16) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on March 29, 2017.

_____
Gray H. Miller
United States District Judge